May I please support Brian Van Bleck on behalf of plaintiff Susan J. Peabody and the putative class? And I'd like to reserve about three minutes for rebuttal, if I may. And initially in my time I'd like to address the arguments of the overtime exemption and the unpaid commission claim. The other arguments, I think, are addressed adequately in the brief. If I could, and I hate to interrupt you, but I guess I don't. If we determine that the commission could be allocated over the course of the month to all the hours worked, don't the claims for issues two, three, and four also fail? I'll have to remind myself what those issues were. Well, Peabody could have been paid less than the minimum wage for issue two. EWC was exempt from doing hourly wage statements in issue three and no late wage payments or overdue for issue four. So I'm just trying to concentrate because it seems to me issue one is the make or break. And that being the overtime exemption? Yes. Actually, not quite, Your Honor, because the unpaid commission issue is actually really independent from the allocation and the overtime exemption. And I believe that why? Because they rest on different legal grounds. Well, but you've got to go. If you don't get the first exemption for the overtime, you're not going to get to that fourth. I mean, concentrating very carefully on what you've argued, I don't – I think the district court, by making that first decision it did, full well determined the case because it didn't have anything to do on the other three issues after it once determined that. Well, I'm not sure that's correct, Your Honor, because the final issue four goes to the amount of the commissions that were due and the applicable commission rate that was due. But no late payment of wages are overdue if we don't say they have a problem in number one. I believe there would be a late payment because the commissions were paid at a lower and incorrect commission rate under – That's your contract argument. That's the contract argument. That's the rate change from 2008 to 2009. Correct. Okay. Let's assume that you lose on that argument and – I'd prefer not. I understand. But for purposes of answering Judge Smith's question, the bigger issue to me is the one that he framed in his first question to you. Well, again, I do believe – well, let's – why don't I just address the commission – the overtime claim, the application of the exemption then, which turns – we contend that the court erred below in finding that they met – Time Warner Cable met the element of the exemption, the commission – I'll call it the commission sales exemption in Section 3D of the wage order, which has a minimum wage component. And that was the only element of the exemption that was at issue. And that minimum wage component requires payment of one-and-a-half times the minimum wage. And the question, which, frankly, is a legal question, I think is up on – it's on de novo, and it's a straight legal issue, I believe, in construction of the statute, the wage order, is the appropriate time period for gauging that one-and-a-half times the minimum wage. Your position is that we should answer that question by looking at the – is it the DSLE manual, the enforcement manual? That is – I believe that – I'm advocating that that's the correct interpretation, is the one adopted by the Division of Labor Standards Enforcement, the DLSE, which is the agency charged with enforcing the labor code. I'm going to try a trick to maybe get out from under this. Would you agree with me that there's no California law directly on point? Directly on point in terms of – I guess I would have – That prohibits the allocation of a commission over a time period. I would agree that there's nothing exactly on point. Why shouldn't we just certify this over to California and let them go at it? Because here I am trying to interpret their rules and regulations and law, and why don't we just send it over there? I actually think that might be appropriate. I do think that would be appropriate. I do believe it's a straight issue of California law. Because, to be fair, the hardest part of this, wouldn't you agree, is that it is fair to award overtime and a minimum wage compensation to an employee who earned nearly $75,000 in 10 months? Isn't that the tough question? I mean, you can apply the law. You can argue the law, which is what you're doing. But the bottom line is, if California wants to let somebody who earns nearly $75,000 in 10 months have a problem with overtime and minimum wage, let them do it. They're the ones who have this in front of them. Why not send it over there? I think that would be appropriate, Your Honor. I know under the Class Action Fairness Act, obviously a lot of state law claims because this was a class action end up in federal court. But I do think this is an issue of California wage law, labor code, the application of California's administrative agency. And I think it would be entirely appropriate to let California courts resolve the issue. The problem, counsel, for me on these sorts of cases is, you know, we can opine and issue a published opinion that gives you our interpretation of what California law is on the issue, but it's only binding on federal district courts in California. And the California Courts of Appeal are perfectly free to say, thank you very much, Ninth Circuit, for your advisory opinion, but we're the ultimate arbiters of California law and come out completely the other way, which doesn't do the business community any good because it doesn't resolve the issue. And I think that that is an important issue because this is an area that certainly could, as this case has illustrated, could benefit from some certainty as to how to apply that particular provision. You're also aware, I guess, that though the California Court of Appeals gives the DSLE manual certain deference, that the California Supreme Court has held the manual to be void and not entitled to any deference? Well, I believe it's been held to be a persuasive. Well, did you read Tidewater Marine Western v. Bradshaw? Yes. Did you read Merillion v. Royal Packaging Company? Yes. They say it's void and not entitled to any deference in those opinions. There are opinions that have relied upon it. Well, not relied, perhaps, but. Now they're California Court of Appeals opinions. Correct. But nothing in the Supreme Court, they're saying it's void and not entitled to deference. Well, it may be persuasive. And I do think there's an argument. It's not entitled to deference. It doesn't talk about persuasive. Well, I would agree with Your Honor. It is not entitled to any formal deference, but courts have. There's no other law in California, is there, other than this DSLE manual, which we'd have to give any deference to on this issue? You'd agree with me on that, right? Because you said we ought to send it over there and have them talk about it? I think that's correct. So if there's no California law on point, if we don't send it over to the California Supreme Court, why shouldn't we turn to FLSA provisions to fill the gap? Because the only FLSA provision, and I think the Court may be referring to the regulation cited by Time Warner Cable, I think it's 17. Under FLSA, the commissions can be apportioned in a reasonable and equitable method based on average total pay over a period such as four weeks, when it's not practicable for the commissions to be apportioned to particular work weeks. That's 29 CFR 778.120. Right. Well, the first point in determining whether there is a gap, I mean, I think that's an interpretation of state law to begin with, and to determine whether the Fair Labor Standards Act in this particular case is inconsistent with California labor code provisions, because there is no blanket requirement to follow the Fair Labor Standards Act provisions. And many cases, including the Murillian case that you just mentioned, found that Federal law, the Fair Labor Standards Act, is significantly sufficiently different from the labor code that it doesn't warrant application of the Fair Labor Standards Act. But the problem is that the labor code doesn't definitively answer the question either. You have to look to the manual in order to interpret what the labor code means. And in the face of these California appellate court decisions saying that we don't owe any deference, it's a little difficult for us to say you win, or let me put it this way, it's difficult for us to say that we can't look to the Fair Labor Standards Act because there's a clear conflict with California law on the question. Well, as we discussed in the brief, there are, we're not relying solely on the manual by any means, and it's a very, we believe the manual's interpretation is correct, but it's. What else have you got beside the manual? The problem is, I think I thought you told Judge Smith, that we don't have any definitive California cases. Well, we don't have a case right on point on this issue, but it's a very short extension from laws that do exist, other provisions of the labor code and the wage order, to find that the minimum wage requirement of this overtime exemption element has to be satisfied in every work week or at least pay period. And we, there are certainly statutes that support that interpretation. In particular, within the same wage order that contains this exemption, the section that talks about the minimum wage itself, the base minimum wage on which this income, or this minimum wage for the exemption is based, and I'm referring to wage order section 4C, which basically says that the minimum wage on which, again, this exemption is based must be satisfied in every work week. It can't be spread any further than that. And I think it's obviously a canon of statutory construction where two provisions within the same overall statute are referring to the same thing. They should be interpreted together. So isn't your provision that Time Warners should have issued paychecks every week? Well, not paychecks. It must be earned within a work week, and then it must be paid within the pay period since they use a biweekly pay period. But as I understand it, the paychecks themselves, or the, I don't know what you'd call it, there's no recitation of the hour's worth. That's correct. Yeah. Which is another problem. You wanted to reserve three minutes. You've got two and a half left. Okay. Do you want to keep talking or do you want to reserve your time? I'll reserve. Okay. We'll hear from time. Go ahead. Good morning, Your Honors. Scott Carr for the Defendant and Appellee Time Warner Cable, Inc. And this is not a complex case. I think some of the issues that both of you have raised are right on point with this. It comes down to an issue of a well-compensated professional salesperson who made nearly $75,000 over ten months, and of that $75,000, $57,000 approximately was in the form of commissions. No argument. My gut feel tells me that, no, this is not a minimum wage case. We're not talking about somebody working at Burger King who's barely getting by. Exactly. But California law is not so clear on this subject. That's the conundrum. Well, and I think, and I know, Judge Smith, you mentioned, and you both mentioned about the DLSE manual being void. But within that DLSE manual, with respect to this specific exemption, they specifically say, look to 7i, look to the FLSA exemption on this. And we've cited those. Unless there's a conflict. Unless there's a conflict. And the question is, is there a conflict? And there clearly is a conflict between the manual and FLSA regulations on how you interpret the computation of the allocation of commissions over the time period, is there not? I don't think there's a conflict at all. Well, you can't look at Section 50.6.1 from the DSLE manual, which it seems to me directly supports what Peabody wants me to do, and say what you're saying, can you? Absolutely, Your Honor. I guess I'm having a tough time. Okay. I hope I can clarify that, shed some light on it. But within the manual and within the wage order, particularly the minimum wage part of it that he talked about, it says that you pay the minimum wage or you pay the wage in the pay period or for the pay period, and that's supposed to include the commissions. And what we have here is a situation where she's making a $20,000 annual salary, and that's paid biweekly. She also makes commissions, the line share of her compensation. She's paid commissions, but those are based on the broadcast month, which, Judge Smith, you referenced the $778.12. Right, right. And those broadcast months are exactly four weeks or exactly five weeks, and it fits right within all of that, the pay period. Okay, go ahead. The problem, though, arises in the manner in which the commissions are earned, isn't it? Because under the Time Warner Compensation Agreement, the commission is not deemed to be earned until after the ad airs and the revenue is received for the running of that ad, which results in these discrepancies, if you will. You know, you could have a week or two where it's like a cash flow problem for a law firm. You don't receive enough revenue from the outstanding bills that you have, and so you might be working during that week or two-week period for less than minimum wage, although I guess that wasn't the case here, even if we assume she worked 45 hours per week. Correct. Not exactly what I was trying to get to before the question, and I think it might help answer the question. Did I confuse you with my question? No, not at all. No, no, I think I'm okay. Okay. What I was getting to is that for the commissions, there's a different pay period. It's a monthly pay period. The commissions are paid in the month following the broadcast month for which they were late. So if you look to federal law or even California law, California DLSE opinion letters, which unlike the DLSE manual are not void, they're entitled to some persuasive effect. For 20 years, the DLSE has been saying, yes, it's okay to pay commissions on a monthly basis if that's what you've agreed to with your employees, and that's what we've done. And so the pay period, which is the relevant term, for the 3D exemption you've got two really important terms, earnings, which include, specifically include commissions. And you've got the pay period, which in the instance of the commissions is monthly. So it makes perfect sense to allocate those commissions to each of the four or five weeks in the broadcast month. Mr. Hart, if this were a federal wage and hour claim, you'd have me with that argument because we just had the Supreme Court's decision in SmithKline that told us that where the department suddenly changes course midstream in how it evaluates compensation for commission sales representatives, that we don't give any deference to the department's position. But I'm not sure there's a California Supreme Court case that says the same with regard to the deference that we would otherwise owe the manual provision. Right. I don't believe there's a California Supreme Court case that talks about the persuasive effect of a deal as the opinion letter. But the Court of Appeals is pretty consistent in that regard. And Judge Guilford, in this case the district court, did follow one of those opinion letters in connection with the wage statement claim. Let me ask you this. I realize that the general California labor law, Section 205, requires that the pay periods occur every two weeks. But there's an exemption to that section under 204.2, which allows a once-monthly pay period for executive, administrative, and professional employees. You didn't cite that exception in your briefs. Why didn't you? Well, I don't know that she would necessarily qualify for the executive, administrative, or professional part of that, Your Honor. You don't think it's applicable at all? I'd have to go back and look at it. We haven't. You're not making that argument. I'm not making that argument. I'm going to ask you a similar question that I ask Peabody. Why don't we just send this over to California Supreme Court? I don't think you have to because the California in this particular case. Well, there's no law on point. Well, the statutes do say. You say the statutes say. Okay. I'm reading the manual, the SLE manual, and I can find two different parts. You say if it's not inconsistent, I'm having a tough time. And they've said don't even look at this manual, Supreme Court. Right. It's void and no difference, and that's all you argue. I thought your argument would be get rid of that manual. Let's go to FLISA right now. Let's forget this. That would be great. You didn't argue that, though. But why don't I just go send that then to the California Supreme Court since there's no California law directly on point? Well, I think in this instance. What case is directly on point? Interpreting this provision as you want it interpreted. Interpreting this provision, California Supreme Court authority interpreting this provision, this particular part of that exemption, there is no case. Of course, clearly it would have been cited by one of us if such a case existed. That is true. But this particular exemption is very almost identical to the 7i exemption, except for a couple of things that the DLSE clarified, for instance, the definition of commissions. And under 7i, the law under 7i, case law, everything, it's pretty uniform that you allocate these commissions to whatever work they represent. I have no other questions. I don't either. Unless you have any other points. Unless there's anything else you'd like me to discuss with regard to minimum wage or the contract. I think it all rises and falls on point one. Or the contract claim. Yeah. Okay. Which I don't find to be a hard question. Okay. We don't either. Which perhaps my colleagues will differ in conference. All right. Thank you. All right. You've got two and a half minutes if you have any further to add. Only insofar as I do think this is an issue that would be appropriate for decision by the California courts. It does involve the Fair Labor Standards Act exemption is materially different. And it involves also it overlays with issues of California law concerning the timing of payments that are obviously very different from the Fair Labor Standards Act. The labor code has provisions regarding the work week that should be used and when payments should be made under the California Minimum Wage Act as well. I think it also involves public policy compliance issues. The rule that we are advocating would be much easier for employers to comply with, employers and employees, because you would only have to look at the pay statements to know whether somebody was compliant with the income part of the exemption. Whereas under the version of the law advocated by Time Warner, you have to wait until after commissions have been earned at some point down the road. It could be months or even a year or more in certain cases. And you have to look backwards and come up with some kind of accounting allocation of those commissions. And then, frankly, that would be a nightmare to enforce. And no one would know whether they were exempt or not until that time. Your argument would be that there should be sufficient advances made that could be credited back later when the commissions are actually received. Exactly. And it would have been very easy for Time Warner to comply. They could have made a nonrefundable draw against commissions. It would have been a very easy way to comply that was equal to one and a half times the minimum wage. Or they could have, of course, just paid the $12 per hour as a guaranteed hourly amount. And, again, that would be a bright line rule that employers and employees could rely upon to know whether there was compliance and whether they were exempt or not. The rule that Time Warner Cable was advocating has some very odd implications in that a person would not you wouldn't know whether someone was exempt or not until later. It would only be like a retrospective test as to whether they later earned commissions that would then be allocated after the fact to those earlier pay periods. So when they're in that pay period at the time, there would be no way to know whether they were exempt or not. It would be a very odd test to comply with. And I think it raises a lot of enforcement compliance issues as well as public policy issues and deference to the, if any, to the Division of Labor Standards enforcement positions. And for all of those reasons, I think it would be very appropriate for the California courts to decide this issue in California law. All right. Very well. I thank you both for your arguments. Very helpful. The case just argued is submitted. Let me just tell you that if we do decide to certify, there's no guarantee that the California Supreme Court will agree to accept the certified question. But that's not something that we have any control over. So bear that in mind. They've been known to tell us, decide this yourself. Yeah. Thanks very much for your letter, but we're not going to respond. Okay. We love it. This is no Proposition 8 case where we're sure they're going to take it. Yeah. All right. We will take a ten-minute recess for a mid-morning break and then come back and hear the last two cases on the calendar.
judges: Burgess, Tallman, Smith